IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ZINA WEST-LEWIS,               §
                               §
            Plaintiff,         §
                               §
V.                             §          No. 3:17-cv-345-M-BN
                               §
                               §
NANCY A. BERRYHILL,            §
Acting Commissioner of Social Security, §
                               §
            Defendant.         §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Zina West-Lewis seeks judicial review of a final adverse decision of the
Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons
explained below, the hearing decision should be reversed and remanded.

**Background**

Ms. West-Lewis alleges that she is disabled due to a variety of ailments
including migraines, blackouts, a stroke, knee and back pain, schizophrenia, injuries
resulting from a car accident, memory loss, fainting and depression. *See* Dkt. No. 10
(Administrative Record ["Tr."]) at 233, 265-66, 290). After her application for
supplemental security income ("SSI") benefits was denied initially and on
reconsideration, Ms. West-Lewis requested a hearing before an administrative law
judge ("ALJ"). That hearing was held on July 8, 2015. *See id.* at 75-102. At the time of
the hearing, Ms. West-Lewis was 52 years old. She is a high school graduate and has

past work experience as a general office clerk, sales clerk, and teacher's assistant. Ms. West-Lewis has not engaged in substantial gainful activity since February 12, 2013.

The ALJ found that M. West-Lewis was not disabled and therefore not entitled to SSI benefits. Although the medical evidence established that Ms. West-Lewis suffered from affective disorder, seizure disorder, paranoid schizophrenia and borderline intellectual functioning, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that Ms. West-Lewis had the residual functional capacity to perform a limited range of light work but could not return to her past relevant employment. Relying on a vocational expert's testimony, the ALJ found that Ms. West-Lewis was capable of working as a garment sorter, marker, and inspector counter – jobs that exist in significant numbers in the national economy. Given her age, education, and exertional capacity for light work, the ALJ determined that Ms. West-Lewis Plaintiff was not disabled under the Medical-Vocational Guidelines.

M. West-Lewis appealed that decision to the Appeals Council. The Council affirmed.

Ms. West-Lewis then filed this action in federal district court. Ms. West-Lewis challenges the hearing decision on three general grounds: (1) the ALJ used the wrong legal standard in evaluating the severity of her impairments; (2) the ALJ failed to consider all of her medically determined impairments; and (3) the ALJ failed to properly evaluate medical opinion evidence.

The undersigned concludes that the hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with these findings and conclusions.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive

4

and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show

5

that he could and would have adduced evidence that might have altered the result."
*Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Among the arguments Plaintiff makes is a single ground that compels remand – the ALJ failed to use the proper legal standard to evaluate Plaintiff's severe impairments.[1] Plaintiff contends that, even though the ALJ found her affective disorder, schizophrenia, and other psychotic disorders to be severe, the ALJ failed to consider all of her vocationally significant impairments. One of Plaintiff's arguments is that the ALJ committed reversible error by failing to apply the appropriate legal standard, set forth by *Stone v. Heckler*, 752 F.2d 1099, 1102 (5th Cir. 1985), and, as a result, failed to consider the effect of vocationally significant impairments on Plaintiff's residual functional capacity or "RFC."

Plaintiff argues that the ALJ committed a *Stone* error by citing and apparently applying the statutory definition of "severe" – stating that an impairment is severe "if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." Tr. at 62 (citing 20 C.F.R. §§ 404.1521, 416.921; SSR 85-28, 96-3p, & 96-4p).

---

[1] By recommending a remand of this case for further administrative proceedings, the undersigned does not suggest that Ms. West-Lewis is or should be found disabled.

At Step 2, the primary analysis is whether a claimant's impairment, or combination of impairments, is severe, irrespective of age, education, or work experience. *See Stone*, 752 F.2d at 1100. In *Stone*, the United States Court of Appeals for the Fifth Circuit "construed the current regulation as setting the following standard in determining whether a claimant's impairment is severe: '[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" *Id.* at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)). In making a severity determination, the ALJ must set forth the correct standard by reference to Fifth Circuit opinions or by an express statement that the Fifth Circuit's construction of the regulation has been applied. *See Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986).

A court must assume that the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to [*Stone*] or another [opinion] of the same effect, or by an express statement that the construction [the Fifth Circuit gave] to 20 C.F.R. § 404.1520(c) (1984) is used." *Stone*, 752 F.2d at 1106. Notwithstanding this presumption, the Court must look beyond the use of "magic words" and determine whether the ALJ applied the correct severity standard. *See Hampton*, 785 F.2d at 1311. That is, the presumption may be rebutted by a showing that the ALJ applied the correct legal standard, regardless of the ALJ's recitation of the severity standard, or that the ALJ's application

7

of the incorrect standard was harmless. *See Morris v. Astrue*, No. 4:11-cv-631-Y, 2012 WL 4468185, at *9 (N.D. Tex. Sept. 4, 2012), *rec. adopted*, 2012 WL 4466144 (N.D. Tex. Sept. 27, 2012); *see also Taylor v. Astrue*, No. 3:10-cv-1158-O-BD, 2011 WL 4091506, at *6 (N.D. Tex. June 27, 2011), *rec. adopted,* 2011 WL 4091503 (N.D. Tex. Sept. 14, 2011) (applying harmless error analysis in *Stone* error cases).

In her decision, the ALJ did not refer to *Stone* and instead set forth the severity standard that reflects the regulations set forth by 20 C.F.R. § 404.1520(c) and § 416.920(c). *See* Tr. at 61. Her language is similar or identical to that at issue in *Lacy v. Colvin*, No. 3:13-cv-1312-BN, 2013 WL 6476381, at *8 (N.D. Tex. Dec. 10, 2013), and *Sanders v. Astrue*, No. 3:07-cv-1827-G-BH, 2008 WL 4211146, at *7 (N.D. Tex. Sept. 12, 2008). In *Sanders*, as in the instant case, the ALJ made no reference to *Stone* but stated that an "impairment or combination of impairments is 'not severe' when medical or other evidence establish only a slight abnormality or combination of slight abnormalities <u>that would have no more than a minimal effect on an individual's ability to work</u>." *Id.* (emphasis in original). The court in *Sanders* reasoned that this language indicated that the impairment could have, "at most, a minimal effect on a claimant's ability to work." *Id.* Because the standard set forth in *Stone* "provides no allowance for a minimal interference on a claimant's ability to work," the language in *Sanders* was not a proper recitation of the severity standard. *Id.*

As in *Sanders*, the standard recited by the ALJ here allows for a minimal effect on the claimant's ability to work. The *Stone* severity standard does not allow for any

interference with work ability – even minimal interference. *See Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805-06 (N.D. Tex. 2009); *Morris*, 2012 WL 4468185, at *5. The ALJ therefore erred because she did not actually state the same standard mandated by *Stone*.

In the past, this would be grounds for automatic remand because it constituted a legal error. *See, e.g.*, *Scroggins*, 598 F. Supp. 2d at 806-07; *Sanders*, 2008 WL 4211146, at *8. More recently, however, courts have not automatically remanded such cases. *See, e.g.*, *Lacy*, 2013 WL 6476381, at *8; *Rivera v. Colvin*, No. 3:12-cv-1748-G-BN, 2013 WL 4623514, at *6 (N.D. Tex. Aug. 28, 2013); *Easom v. Colvin*, No. 3:12-cv-1289-N-BN, 2013 WL 2458540, at *4-*6 (N.D. Tex. June 7, 2013). Rather, the presumption that legal error occurred based on the incorrect wording of the standard may be rebutted by a showing that the correct legal standard was actually applied by the ALJ, *see Morris*, 2012 WL 4468185, at *9, or that the error was harmless, *see Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). Many courts have presumed that the *Stone* error is harmless where the analysis continues beyond Step 2. *See, e.g.,* *Lederman v. Astrue*, 829 F. Supp. 2d 531, 539 (N.D. Tex. 2011).

Here, Ms. West-Lewis suggests that the error cannot be harmless because the ALJ did not consider somatoform disorder at all and did not properly consider migraines or psychotic disorder after Step 2 of the Sequential Analysis. That is, according to Ms. West-Lewis, the failure to apply the proper *Stone* standard was not

harmless because the ALJ did not consider these impairments in Step 4 or Step 5 and possibly found them non-severe based on the incorrect standard for severity.

At Step 2, the ALJ found that Plaintiff has severe impairments of affective disorder, seizure disorder, paranoid schizophrenia, and borderline intellectual functioning. The ALJ found that Plaintiff does not have severe impairments related to back and knee pain, asthma, hypertension, and migraine headaches. At Step 4, the ALJ found that Plaintiff has the RFC to lift and carry twenty pounds occasionally and ten pounds frequently; stand, walk, and sit for six hours in an eight-hour workday; and occasionally lift above the head, stoop, kneel, crouch, crawl, and bend. The ALJ further found that Ms. West-Lewis should be restricted from working around hazards, including heights and industrial hazards. From a mental standpoint, the ALJ found that Ms. West-Lewis is able to understand, remember, and carry out simple tasks and simple instructions; is limited to incidental contact with coworkers and supervisors; and is restricted from contact with the public. *Id.* at 64. Based on the RFC, the ALJ found that Ms. West-Lewis could work. *See id.* at 68.

In the narrative, the ALJ noted Ms. West-Lewis's complaints of back and knee pain but found that they were not severe because the medical evidence showed that Ms. West-Lewis developed spinal difficulties in 2014, nearly a year after the application filing date, and the first objective evidence of knee pain was an October 2014 Magnetic Resonance Imaging ("MRI") of Ms. West-Lewis's knee, which showed a marginal tear of the medial meniscus, minimal edematous change in the ACL

without disruption, and minimal effusion of the knee joint. *See id.* at 62 (citing *id.* at 601-02, 606-07).

The ALJ also acknowledged that the medical evidence documents Ms. West-Lewis's diagnoses of asthma, essential hypertension, and migraine headaches but found these impairments were not severe "because there is no indication that these conditions significantly impact [Ms. West-Lewis's] work capability." *Id.* at 62. According to the ALJ, Ms. West-Lewis's migraines "were the result of medication withdrawal," and her hypertension and asthma were controlled by medication. *See id.* at 62 (citing *id.* at 365, 597).

Ms. West-Lewis contends that it cannot be determined from the ALJ's analysis whether bilateral meniscal tears in her knees and migraine headaches posed any interference with her ability to perform work-related activities. The Commissioner does not respond to this argument but instead focuses on Ms. West-Lewis's second argument that the ALJ did not properly evaluate her mental impairments.

Ms. West-Lewis also argues that the ALJ failed to consider whether her psychotic disorder or somatoform disorder meet or equal the severity requirements of any impairment listed in Appendix 1. Ms West-Lewis's treating physicians found her to have psychotic features, *see id.* at 618, 620, 642 & 645, and diagnosed psychotic disorder, *see id.* at 578. Consulting examiners diagnosed somatoform disorder*, see id.* at 112, 128, which Ms. Lewis-West contends was never evaluated by the ALJ.

11

At Step 3, the ALJ found that Ms. West-Lewis did not have an impairment that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 63. To make this determination, the ALJ gave consideration to Listings 12.04 and 12.06. *See id.*; 20 C.F.R. § 404, Subpt. P, App. 1, Listings 12.04 & 12.06. The ALJ found that the mental impairments were not severe because Ms. West-Lewis did not meet the paragraph B criteria of Listings 12.04 and 120.6. because they do not show at least two "marked" limitations or one "marked limitation" and "repeated" episodes of decompensation, each of extended duration. *See* Tr. at 63.

But the ALJ did not consider her mental impairments – specifically psychotic disorder – under Listing 12.03. *See* Tr. at 63. Listing 12.03 addresses schizophrenic, paranoid, and other psychotic disorders. *See* 20 C.F.R. § 404, Subpt. P, App. 1, Listing 12.03 (August 12, 2015) (revised Jan. 17, 2017 for cases adjudicated after that date, *see* 82 FR 5872, Jan. 18, 2017). Ms. West-Lewis asserts that the ALJ's failure to consider her psychotic disorder under Listing 12.03 was due to the failure of the ALJ to apply the proper severity standard.

Impliedly conceding that the ALJ failed to apply the proper severity standard, the Commissioner argues that the error was harmless because Ms. West-Lewis did not meet the paragraph B criteria. Similar to Listings 12.04 and 12.06, Listing 12.03 requires repeated episodes of decompensation, each of extended duration, as an alternative finding. *See id.* at (B), (C). Listing 12.03 is also satisfied if medical evidence

shows that a claimant has a history of a chronic schizophrenic, paranoid, or other psychotic disorder lasting at least two years. *See id.* at (C).

At Step 3 of the evaluation process, the ALJ compares the claimant's impairments with impairments considered severe enough to disable an individual. *See Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir.2000). Often referred to as "the listings," the impairments are listed in Appendix 1 of the regulations. *See* 20 C.F.R. Part 404, Subpart P, app. 1. When an ALJ's Step-3 determination is at issue, the reviewing court must (1) determine whether the ALJ supported the Step-3 determination with a discussion of the relevant evidence, and, if he failed to do so, (2) determine whether the ALJ's error was harmless. *See Cadzow v. Colvin*, No. 5:12-cv-225-C, 2013 WL 5585936, at *4 (N.D. Tex. Oct.10, 2013) (citing *Audler*, 501 F.3d at 448-49). Error is "harmless" when it does not compromise the ALJ's ultimate conclusion. *See id.* (citing *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988)). But if the uncontroverted evidence suggests that the claimant's impairments meet the requirements of a listing, the ALJ's failure to provide the basis for his Step-3 decision is error that requires remand. *See Cadzow*, 2013 WL 5585936, at *4 (citing *Audler*, 501 F.3d 449).

The Court may affirm only on the grounds that the ALJ stated in her decision and therefore cannot accept the Commissioner's argument that the ALJ's failure to consider Ms. West-Lewis's mental impairments, specifically psychotic disorder, was harmless because the "paragraph" B criteria would not be met under Section 12.03 either. *See Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014). The Court cannot

guess at what the ALJ may have found where she did not consider Listing 12.03 in her decision.

And the ALJ's error was harmful. The ALJ may have arrived at a different conclusion if she considered Ms. West-Lewis's impairments under the proper legal standard at Step 2 and, had she done so, may have found her psychotic disorder to be severe at Step 3 if she had evaluated Ms. West-Lewis psychotic disorder under the criteria of Listing 12.03, which differ from the criteria for Listings 12.04 and 12.06, which may have impacted her findings at Steps 4 and 5.

In view of all the evidence, the hearing decision must be reversed so the Commissioner can evaluate all of Ms. West-Lewis's impairments, including all of her mental impairments, under the proper severity standard. In light of this determination, the Court need not reach Ms. West-Lewis's other issues.

## Recommendation

The hearing decision should be reversed and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation

14

where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 31, 2018

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE